**Barbara Muney LIBERTELLI, Plaintiff,**

v.

**HOFFMAN–LA ROCHE, INC.,
Defendant.**

No. 80 Civ. 5626 (RWS).

United States District Court,
S.D. New York.

Feb. 17, 1983.

Bradley B. Davis, New York City, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City, for defendant Hoffman La Roche, Inc.; Karl E. Seib, Jr., James V. O'Gara, III, New York City, Rochelle M. Sobel, Nutely, N.J., of counsel.

## OPINION

SWEET, District Judge.

This diversity action was commenced by plaintiff Barbara Muney Libertelli ("Libertelli") in November, 1980, seeking damages for alleged harm resulting from ingestion of the drug Valium during the period 1968 to 1974. Defendant Hoffman-LaRoche, Inc. ("Roche") has moved for summary judgment dismissing the complaint based upon a jury verdict rendered with respect to certain factual issues related to the statute of limitations. Libertelli has moved for discovery of the juror's deliberations and to set aside the jury's verdict. The motion of Roche will be granted and the complaint will be dismissed. The motion of Libertelli will be denied.

Roche initially moved for summary judgment pursuant to Fed.R.Civ.P. 56, asserting that this action was commenced after the expiration of the three-year statute of limitations period for products liability claims. Libertelli opposed the motion, arguing, *inter alia,* that she was insane within the meaning of N.Y.Civ.Prac.Law § 208 (McKinney Supp.1982) ("CPLR") and that the statute was tolled.[1] In an opinion dated July 31, 1981, this court held that a three-year limitations period applies, but denied

Roche's motion because the question of Libertelli's insanity could not be decided as a matter of law from the pleadings and affidavits. A factual hearing limited to the issue of insanity was ordered to be held. The parties thereupon conducted discovery on the issue of Libertelli's alleged insanity. During this time, Libertelli requested a jury for the insanity hearing. This court granted the request in a memorandum opinion dated November 8, 1982.

The hearing was held on November 17, 18, 22, 23 and 24, 1982. Testimony was taken from friends and acquaintances of Libertelli, from physicians and other professionals who had treated her over the years, and from an expert witness, a psychiatrist who examined Libertelli and testified as to her mental condition. Documentary evidence, primarily in the form of records kept by those who treated Libertelli, was also received. A special verdict form consisting of two questions was submitted to the jury. The first question asked: "Was Barbara Muney [Libertelli] unable to protect her legal rights because of an overall inability to function in society during the period February 1974 to October 1977?," followed by the question "Was Barbara Muney's [Libertelli] inability to function in society and her resulting inability to protect her legal rights continuous during the period February 1974 to October 1977?" The jury answered the first question "Yes" and the second question "No."[2]

Subsequently, Roche submitted a proposed order granting summary judgment in

---

1. CPLR 208 reads, in pertinent part:
   If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, ... the time within which the action must be commenced shall be extended to three years after the disability ceases .... The time within which the action must be commenced shall not be extended by this provision beyond ten years after the cause of action accrues.

2. The special verdict form read in full:
   Special Verdict Form
   1. Was Barbara Muney unable to protect her legal rights because of an overall inability to function in society during the period February 1974 to October 1977?

   Yes __X__     No ____

   If the answer is "No" do not answer any further questions.
   If the answer is "Yes" go on to the next question.
   2. Was Barbara Muney's inability to function in society and her resulting inability to protect her legal rights continuous during the period February 1974 to October 1977?

   Yes ____     No __X__

   Stop. Sign the form and advise the Marshall that your deliberations have been completed.

                         /s/
                         Foreman

its favor based on the jury's responses. Libertelli responded by motion arguing that the jury's responses indicate that the statute of limitations was tolled and that the motion for summary judgment should be denied. Alternatively, Libertelli seeks to obtain the names and addresses of the jurors in order to interview them and "clarify" what they understood the special verdict questions to mean. In addition Libertelli seeks to have the verdict set aside as against the weight of the evidence. Finally, in a reply memorandum Libertelli argues that this court's charge to the jury that Libertelli must be found to have been continuously insane within the meaning of CPLR 208 was incorrect as a matter of law.

■ This court instructed the jury on the law as follows:

The law has defined certain of the conditions which should be considered with respect to the insanity as it is set forth in Section 208. Essentially, you must determine one central fact: Was Ms. Muney continuously incapable of managing her affairs during the three year period in question. Put differently, you must determine whether Ms. Muney was unable to manage the ordinary and common affairs of business and life with which she was normally confronted to such a degree that she was unable to protect her legal rights.

This incapacity must result from an overall inability to function in society. In making that determination you may consider, among other things, whether Ms. Muney was able to collect in her mind the particulars or the elements of a business transaction, and hold them in her mind for a sufficient length of time in order to understand their obvious relationship to each other and to form some rational judgment with respect to such elements, that is to say, whether Ms. Muney was capable of using consecutive reasoning so as to think rationally about whatever the matter was at hand.

You may of course also consider the diagnosis of Ms. Muney's condition on this subject relative to her claim that she was

suffering from schizophrenia. You may also consider of course the manner in which she conducted her daily affairs.

However, the determination of Ms. Muney's disability to function in society should be a pragmatic one, not necessarily based on medical or psychological classifications alone. You are not limited to these considerations which I have just mentioned but you should consider all the facts and circumstances in evidence.

As I have indicated, the law requires that in order to toll the statute of limitations, Ms. Muney must establish that she was under a disability during the period in question, February 1974–October 1977, and thereby unable to protect her legal rights due to an overall inability to function in society. If you find that she has established that she suffered from a disability but that at any time during the period, the three year period in question, she experienced a lucid interval during which she regained her ability to protect her legal rights, then the toll is lost and Section 208 does not apply.

The requirement of continuous disability was described by this court in *Graboi v. Kibel,* 432 F.Supp. 572, 579 (S.D.N.Y.1977):

[The insanity alleged under CPLR 208] must also be found to be continuous. In other words, if the plaintiff had a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity.

(citations omitted). Libertelli now argues, somewhat belatedly considering the fact that no objection was made at the hearing, *see* Fed.R.Civ.P. 51, that the New York Court of Appeals case of *McCarthy v. Volkswagen of America, Inc.,* 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1980), has done away with the continuous disability requirement of CPLR 208.

In *McCarthy,* the Court of Appeals held that a plaintiff suffering only from a "post traumatic neurosis," a condition, for example, manifesting itself in an inability to confront the memory of the event giving rise to the lawsuit, could not be found in-

sane within the meaning of section 208. The court stated that in enacting section 208 the New York legislature "meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society," *id.* at 548, 450 N.Y. S.2d at 460, 435 N.E.2d at 1075, and expressly disaffirmed cases holding that a post-traumatic neurosis is sufficient to toll the statute. *See, e.g., Prude v. County of Erie,* 47 A.D.2d 111, 364 N.Y.S.2d 643 (4th Dep't 1975); *Hurd v. County of Allegany,* 39 A.D.2d 499, 336 N.Y.S.2d 952 (4th Dep't 1972). The court also noted that the legislative history of section 208 indicates that the toll for insanity should be "narrowly interpreted." 55 N.Y.2d at 548, 450 N.Y. S.2d at 459, 435 N.E.2d at 1074.

Libertelli contends that the effect of the *McCarthy* decision is to substitute the over-all inability to function test for the continuity requirement, and notes that the continuity requirement is not discussed in *McCarthy.* I disagree. The *McCarthy* court held only that the toll is restricted to those who suffer from an overall inability to function in society rather than an inability to deal with a single aspect of life. Given the court's statement that section 208 should be narrowly interpreted to avoid unwarranted extensions of the toll, there is no basis to conclude that the continuity requirement has been eliminated, particularly given the language of the statute. Section 208 extends the time within which an action must be commenced to "three years after the disability ceases" and the disability must be present "at the time the cause of action accrues." Thus, when the disability ceases, the toll is lost, and there is no mechanism to resurrect it. Therefore, the jury was instructed that if Libertelli "established that she suffered from a disability but that at any time . . . she experienced a lucid interval during which she regained her ability to protect her legal rights, then the toll is lost and section 208 does not apply."

■ Moreover, the jury's conclusion that Libertelli's disability was not continuous is not contrary to the weight of the evidence.

While Libertelli is clearly a troubled person, as evidenced by her history of mental problems and by her demeanor at the hearing, the evidence was more than sufficient to allow the jury to conclude that she was able to function in society for significant periods between 1974 and 1977. She travelled to Europe in 1976 and made trips within the United States; she enrolled in several college courses; she consistently voted during the period in question, both in person and by absentee ballot; and she managed her finances, including opening bank and charge accounts.

■ Libertelli continues to urge, as she did at the hearing, that her expert's opinion that she is and has been schizophrenic compels this court to find her insane as a matter of law for the purposes of tolling the statute. It is sufficient to dismiss this contention, already rejected at the hearing, with a quote from *Graboi v. Kibel, supra,* 432 F.Supp. at 579:

> [T]he determination of disability should be a pragmatic one, not necessarily based upon medical or psychological classifications above. Certainly the Court is not required, as urged by plaintiff, to accept the conclusions of plaintiff's expert, retained after the commencement of litigation.

On this point, in fact, this case is indistinguishable from *Graboi,* where the plaintiff was also diagnosed as suffering from schizophrenia, yet she was found not to be insane within the meaning of section 208.

■ Finally, Libertelli's counsel alleges, based on statements made to him by certain jurors immediately after the hearing, that the jury was confused as to the continuity requirement. Counsel also alleges that the jury's responses on the special verdict form, *see* note 2, *supra,* are contradictory. Libertelli therefore seeks to obtain the names and addresses of the jurors so that they may be interviewed in order to "clarify" the verdict. Alternatively, she requests that this court communicate with the jurors concerning the verdict.

In effect, Libertelli seeks to inquire into the mental processes of the jurors, an exer-

cise that has long been prohibited in the federal courts.[3] There is nothing to indicate that the verdict was the result of any improper conduct. Also, the answers to the questions posed on the special verdict form are not inconsistent. By answering the first question in the affirmative, the jury found that Libertelli suffered from a disability during the 1974 to 1977 period. The jury found, however, that the disability was not continuous during the period. As described above, the instructions to the jury on the continuity question were clear. There is no indication that any members of the jury were unable to or did not follow the instructions.

For the reasons stated above, Libertelli's motion is denied, and Roche's motion for summary judgment is granted.

The clerk is directed to enter judgment dismissing the complaint. No costs.

IT IS SO ORDERED.

---

**3.** Post-hearing contacts with jurors is governed by Fed.R.Evid. 606(b):

(b) **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

See United States v. Moten, 582 F.2d 654, 665 (2d Cir.1978) (inquiry of jurors should not extend beyond areas that would be admissible under Rule 606(b)); United States v. Cauble, 532 F.Supp. 804, 809 (E.D.Tex.1982) (same). The import of the rule is to bar inquiry into the mental operations and emotional reactions of jurors, as opposed to matters involving external influences. Fed.R.Evid. 606 advisory committee note. In the federal courts, "the central focus has been upon insulation of the manner in which the jury reached its verdict." Id. See, e.g., Farmers Coop. Elev. Ass'n. v. Strand, 382 F.2d 224, 230 (8th Cir.), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967). See also United States v. Dioguardi, 492 F.2d 70, 78–80 (2d Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974).